**UNITED STATES of America, Plaintiff,**

v.

**Randy DENJEN, Defendant.**

**No. 02 CR 155(NG).**

United States District Court, E.D. New York.

April 24, 2003.

Nicolas Bourtin, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Dennis P. McAllister, Bayside, NY, for defendant.

### *ORDER*

GERSHON, District Judge.

On October 17, 2002, defendant, Randy Denjen, a lieutenant at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, pleaded guilty to Counts Two and Seven of a seven count indictment, that is, to causing the victim to engage in sexual contact by threatening and placing her in fear, in violation of 18 U.S.C. § 2242(1)[1], and to making a false statement to the FBI regarding the sexual contact, in violation of 18 U.S.C. § 1001.

With regard to the sexual offense charge, Denjen allocuted to causing the victim to engage in sexual contact by placing her in fear that, if she did not comply with his sexual advances, she would receive sanctions, such as more time in disciplinary segregation. The sexual offense carries a base level of 27 under the Sentencing Guidelines, U.S.S.G. § 2A3.1. The Second Addendum to the Pre–Sentence Report ("PSR") recommends: a two level enhancement because the victim was a person in a correctional facility, § 2A3.1(b)(3)(B); a two level enhancement for obstruction of justice under application note 8 to § 3C1.1; a base level offense of 6

---

1. Section 2242 provides in pertinent part that Whoever, . . . in a Federal prison, knowingly-
(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping). . .
[shall be guilty of a crime].

for the false statement count, which is grouped with the above count, and; an adjustment for acceptance of responsibility of –3, §§ 3E1.1(a) and (b)(2). The PSR also recommends a four level enhancement for the use of force under U.S.S.G. § 2A3.1(b)(1) which states, "If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b), increase by 4 levels." Section 2241(a) provides in pertinent part:

> (a) By force or threat. Whoever, ... in a Federal prison, knowingly causes another person to engage in a sexual act-
> (1) by using force against that other person; or
> (2) by threatening or placing that other person in' fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

Defendant has sought an evidentiary hearing as to the use of force enhancement. The government's position is that the enhancement is applicable.

On February 27, 2003, this court held an evidentiary hearing solely to address the dispute as to the applicability of the use of force enhancement. The parties agreed that the entire conduct of defendant was to be considered relevant conduct in making this determination. The government must prove the use of force by a preponderance of the evidence.

### The Meaning of "Force"

█ "Force" is not defined in Section 2241(a) or in the Sentencing Guidelines. However, the Court of Appeals for the Second Circuit, relying on the legislative history, held that "[t]he statute requires only the use of 'force,' not of 'significantly violent action or threats.' The legislative history indicates that a specific intent of Congress was to reduce the necessity of demonstrating the use of excessive force in order to provide greater protection for the victim." *United States v. Lauck*, 905 F.2d 15, 18 (2d Cir.1990). The Court also held that "the requirement of force may be satisfied by a showing of ... the use of such physical force as is sufficient to overcome, restrain, or injure a person." *Id.* at 17.

> The 'force' that the statute condemns is ... force that, by being used against the other person, results in a sexual contact. The force does not have to be part of the sexual contact itself, but must be used only in order to make the contact. If ... the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact, that is sufficient ....

*Id.* at 18. It is immaterial that the defendant did not use a weapon, did not threaten or harm the victim, and did not inflict pain on her. *Id.* The force required by the statute has been described as including the use of a threat of harm sufficient to coerce or compel submission by the victim. *United States v. Fire Thunder*, 908 F.2d 272, 274 (8th Cir.1990). A finding of force has also been based upon the disparity in size and coercive power between the defendant and his victim, for example, when the defendant is an adult male and the victim is a child. *United States v. Bordeaux*, 997 F.2d 419, 421 (8th Cir.1993). And in *United States v. Lucas*, 157 F.3d 998, 1002 (5th Cir.1998), the court found force based upon the disparity in power between a jail warden and an inmate, combined with physical restraint.

### The Hearing

The sole witness at the hearing was the victim. She was entirely honest and candid, equally so on cross examination as on direct. Even defense counsel acknowledged, "certainly on one point I agree wholeheartedly with [government counsel],

this witness was a very credible witness." The evidence at the hearing established the following facts.

The victim, twenty-four years old at the time of the hearing, and the mother of two young children, is from London. She was arrested at John F. Kennedy airport on July 8, 2001 for importing ecstasy into the United States.

On the night of November 24, 2001, the victim was in solitary confinement, on a suicide watch, at the MDC awaiting sentencing on her plea of guilty to the importation charge. She was in a tiny cell containing a mattress on a cinder block or cement platform that was situated lengthwise along the wall. Based upon the pictures submitted into evidence and her testimony, the distance between the door to her cell and the bed was only a few feet. The victim thought that the cell was underground, like a "dungeon." The cell was isolated from the rest of the prison, and there were no guards or inmates anywhere near it, with the exception of the lieutenant's office down the corridor. Lieutenants have more authority than corrections officers, and they are responsible for discipline and punishment. Denjen was a lieutenant and occupied the office down the corridor from the victim's cell on November 24, 2001. At time of the attacks, Denjen was 6'5" tall and weighed 285 pounds, and the victim was 5'7" tall and weighed 108 pounds.

At approximately midnight, Denjen began talking to the victim, through the window in her cell door, about her sexuality. He then unlocked the victim's cell door, entered her cell and asked her, "what about me and you?" She told him that "I don't see you like that," meaning that he was not her type and that she wouldn't think of sleeping with someone like him. She told him "you're a lieutenant, I'm an inmate, it just doesn't work, it is disgusting." She also told him that she hadn't

bathed for many days and that she felt dirty. Denjen said, "it doesn't matter." Denjen then tried to kiss her and push his tongue into her mouth. He unzipped his pants and took her hand and placed it on his penis while he masturbated. The victim testified that, at this point, she felt physically sick and scared. She said that she didn't want to get him angry because she was afraid that he would hurt her; in her words, "look how big he is." He told her that he wanted to touch her, that she should "think about it" and he would return. He left her in the cell and locked the door. The victim testified that, before Denjen touched her, she didn't really know what was going on and that she was not afraid to tell him "no." She testified that, "[i]t wasn't until I realized what was going on that I kept my mouth shut."

After about fifteen minutes, Denjen returned, opened the cell door and entered the cell. He asked the victim if she had "thought about it," and she said, "Lieutenant, I'm sorry, I don't find you attractive and I don't like you in that way, I am an inmate, you're a lieutenant." She testified that she just kept repeating herself, but he told her that " it doesn't matter." He kissed her and tried to push his tongue in her mouth, but she clenched her teeth. He asked her to kiss his penis, she paused, but eventually did so because, "I thought I had no choice and I was scared and I didn't know what to do." He grabbed the bottom of her jumpsuit, pulled her to him, unbuttoned two buttons and then shoved his hand down into her jumpsuit and touched her sexually. He left again, locking the door behind him. After he left, she "was walking up and down the cell talking out loud to God asking him what to do, I don't know what to do, I don't know what to do, oh, my God, help me, oh, my God, oh, my God, what do I do. I was freaking out, I didn't know what to do. I was so scared, I didn't know what to do."

After approximately five minutes, Denjen returned with cigarettes, but then left to get a lighter. When he returned she went up to the door with the cigarette in her mouth hoping that he might not come right into the cell. However, he came into her cell, removed the cigarette from her mouth and began kissing her "all over my mouth trying to put his tongue in my mouth." He told her "that's it and he wanted more and I must take off my jumpsuit and leave one leg in so that it is quick, easy for me to put my clothes on if somebody comes." She was standing when she took off her jumpsuit, but then sat down on the mattress because she didn't want him to see her naked. He stood in front of her, held out his penis and told her to kiss it. She did so "a little bit." He then told her to "spread it." She spread her legs a little as she was sitting, but, "I wasn't going to spread my legs that way so he came between me and opened my legs." He spread her legs wide with his body and told her to lie down on the bed. She wouldn't lie back lengthwise, the way he wanted her to, so he pushed her shoulders back across the bed until her head and shoulders were pushed against the wall. She was curled up against the wall with her legs up. She did not resist being pushed down.

The victim testified that "he was in a really bad way, he was in a mess and he was shaking all over the place and trying to put his penis inside me and he just couldn't do it because he was in such a frantic mess and eventually he managed to put it in. He was on my stomach, he's got a big stomach." She couldn't breath because he was so heavy. She just turned her head and closed her eyes. She said that there was no way she could have escaped from under his body. When asked why she didn't scream out when Denjen first began his attack, the victim answered, "[s]cream out and get strangled, no." She testified that she did not attempt

to make any noise or draw attention to herself from anywhere else in the MDC at the time of this attack because "[i]t's impossible to do that." Even with the door open, there was "[n]o way whatsoever, not a single soul would have heard me and if they did they work for him anyway so." When asked why she did not physically resist when he made these sexual advances, the victim testified, "[i]t would be silly to, I mean I could get myself into trouble, he could have killed me down there, no one would have known different. I just wanted to survive and get it over with as soon as possible." Denjen stopped the attack when he heard the keys of another corrections officer entering the unit. When the female officer reached the cell door, Denjen told her that, "I've got somebody in here" and the officer said, "oh, have you, okay." At that point Denjen left with the officer.

### Defendant's Arguments

Denjen argues that he did not use force because he did not physically restrain the victim and that the victim made no effort to fight him off. Denjen argues that there must be more force than the normal physical force of contact during sex, since, in any sexual act, there will be some physical force between the parties. He also argues that the victim could have tried to escape and that there was some avenue to at least get out of the immediate area of the attack because the door was wide open during the attacks. Finally, defendant argues that the fact that the victim was previously arrested for physically assaulting a woman in England, who was bigger than she was, shows that, if she had really wanted to fight Denjen off, she would have at least attempted to do so.

### Conclusion

■ The evidence amply supports a finding that Denjen used force when he sexually attacked the victim and that the

sexual contact was a result of the force he used against her.

To begin with, she was locked in an isolated cell to which Denjen had the key, and Denjen had complete control over her. Even when the door was open, she was restrained from getting out of her cell by his presence between her and the door. Thus, there was no means of physical escape. Even if she could have maneuvered around him and gotten through the door and out into the corridor, which is highly unlikely given Denjen's size compared to the size of the doorway, she had nowhere to go, and her testimony that no one would have heard her had she screamed was uncontested. Thus, the victim was physically trapped, either by the locked door when Denjen was not there or by Denjen's enormous physical presence. Second, Denjen used physical force to make sexual contact with the victim when he kept trying to stick his tongue in her mouth, when he grabbed her jumpsuit, pulled her to him, shoved his hands into her jumpsuit and touched her sexually, and when he physically pushed her legs apart, pushed her back against the wall and pinned her down with his weight while he had intercourse with her. All of this occurred after her repeated statements that she did not want to have sex with him.

The victim testified that she told Denjen "no" until he made it clear that he was going to proceed to sexually assault her no matter what she did. As was clear from the testimony, she was in a state of dread. Her fear that any further physical resistance would have resulted only in harm to her was completely reasonable given his size and his behavior. Therefore, the fact that she did not engage in greater physical resistance than set forth here in no way mitigates against a finding of force.

The facts of this case are similar to those in *United States v. Lucas,* 157 F.3d 998 (5th Cir.1998), where a county jail warden was found to have used force against his inmate victim when he summoned her to a relatively secluded location, locked the door so she could not escape his advances and pressed her against a table in such a way that she could not leave. The court stated that "the disparity in power between a jail warden and an inmate, combined with physical restraint, is sufficient to satisfy the force requirement of § 2241." *Id.* at 1002. The court found that, even if the warden had not locked the door, the warden pressing her against the table and thereby blocking her means of egress, sufficed to constitute force. *Id.* at 1002 n. 9. The *Lucas* court was not deterred from finding the use of force by the fact that the victim did not protest when summoned by the warden nor by the fact that the victim did not try to fight off her attacker. Here also, the victim was in a completely secluded area, her egress was blocked by Denjen standing between her and the cell door as well as by his physical weight pressing her against the bed during one of the sexual attacks. Indeed, that the victim was locked in her cell in between attacks and was repeatedly forced to submit to Denjen shows an even greater degree of coercion and force than *Lucas,* where there was only one attack, and there was no finding of a disparity in size between the victim and the defendant.

In sum, the standard of force, as set forth by the Court of Appeals for the Second Circuit in *Lauck* has been met. The sexual contact resulted from a restraint upon the victim that was sufficient that she could not escape it. *Lauck,* 905 F.2d at 18. The four level enhancement under § 2A3.1(b)(1) will be applied.

Sentencing is scheduled for May 6, 2003 at 2:30 p.m.

**SO ORDERED.**